**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| United States of America, | : |
| Plaintiff, | : |
| v. | : Criminal Action No. 19-20-LPS |
| Jeremy Thompson, | : |
| Defendant. | : |

David C. Weiss, Dylan J. Steinberg, U.S. ATTORNEY'S OFFICE, DISTRICT OF DELAWARE, Wilmington, DE

    Attorneys for United States of America

Edson A. Bostic, Eleni Kousoulis, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Wilmington, DE

    Attorneys for Defendants

**MEMORANDUM OPINION**

November 10, 2020
Wilmington, Delaware

**STARK, U.S. District Judge:**

Defendant Jeremy Thompson is charged with four drug and firearm offenses. (D.I. 34) He has filed multiple pretrial motions, including to suppress certain evidence. (*See* D.I. 26; *see also* D.I. 27-30) The motions have been fully briefed (*see* D.I. 26-30, 33, 51, 53-55) and the Court conducted an evidentiary hearing on March 5, 2020 (*see* D.I. 47-48) ("Tr.").

I.  **BACKGROUND**[1]

On September 27, 2018, Dover Police had an individual in custody on drug-related charges. (Tr. at 35, 49) Delaware State Probation Officer Rick Porter, who has been assigned to Dover's Safe Streets unit for the last 15 years, requested to speak with the individual.[2] (*Id.*) According to Porter, the individual (hereinafter, "the Confidential Informant") told him that he had purchased heroin from Defendant Jeremy Thompson and his girlfriend, Jasmin Carter, both of whom were currently staying in Room 153 at the Super 8 Motel in Dover[3] and were operating a black Kia Soul with mud along the wheel well. (*Id.*) The Confidential Informant also told Porter that Defendant and Ms. Carter were selling large amounts of heroin and that he had observed drugs and a silver and black firearm in the motel room the week before. (*Id.* at 35, 52) Porter acknowledges that the Confidential Informant provided this information in an effort to

---

[1] The recitation of the relevant facts incorporates the Court's findings based on the evidence presented. (*See, e.g.*, D.I. 53 at 2-8)

[2] The record does not indicate how Porter found out about the arrest or why he asked to speak with the individual.

[3] During the evidentiary hearing, Porter testified that Defendant had been staying at the Super 8 Motel for "several days." (Tr. at 71) According to the motel registry, however, it appears that Defendant had booked the hotel room for only one night, from September 27-28, 2018. (*See* D.I. 53 Ex. A) Defendant requests this document – which was not available at the time of the hearing – be admitted into evidence (D.I. 53 at 4 n.3), which the Court hereby grants. Defendant does not argue that this apparent discrepancy between Porter's testimony and the motel registration is dispositive of any issue in the motion to suppress.

1

help himself. (*Id.* at 49)

Porter testified that he was already familiar with Ms. Carter because he had arrested her for drugs offenses two times. (Tr. at 35) Defendant and Ms. Carter had also been arrested together three weeks prior to September 27, 2018, for a drug offense. (*Id.* at 36) Law enforcement was also aware that the two were apparently in a romantic relationship. (*Id.*) Moreover, Porter testified that he had seen Ms. Carter operating a Kia Soul about one week prior to September 28, 2018. (*Id.* at 36, 56)

Following his conversation with the Confidential Informant, Porter conducted searches on Defendant and Ms. Carter in state databases. (Tr. at 36) According to Porter, the Delaware Automated Correctional System showed that Ms. Carter was still on active probation, and the Delaware Criminal Justice Information System showed that Defendant was wanted in Delaware Superior Court for civil contempt but was not on probation. (*Id.* at 37, 53-55) Upon learning of Ms. Carter's probation status, Porter obtained verbal approval from his supervisor for an administrative search of Room 153 at the Super 8 Motel. (*Id.* at 36-41, 60) At the time he obtained the approval for the search, Ms. Carter had listed 108 S. Governor's Boulevard in Dover as her residence and had not reported to the probation office that she was staying at Room 153 of the Super 8 Motel. (*Id.* at 57)

On the morning of September 28, the Dover Safe Streets unit gathered and prepared to execute the administrative search of Room 153. (*See* Tr. at 25-26, 37) Porter testified that he specifically requested that Officer Joshua Boesenberg of the Dover Police Department conduct surveillance at the Super 8 Motel to see if he could "locate the Kia Soul and put eyes on the room." (*Id.* at 25, 28, 37) When Boesenberg arrived at the motel, he reported back that he observed a black Kia Soul with mud along the wheel well parked in front of Room 153. (*Id.* at

2

25-26, 37) Porter also asked an undercover officer to make contact with motel management. (*Id.* at 37-38) The motel manager stated that Room 153 was registered to Defendant and that Defendant told him he would be staying there with his "girlfriend." (*Id.* at 38)

During Boesenberg's ongoing surveillance at the Super 8 Motel (which eventually lasted about three hours), he reported to Porter that he had observed Defendant exit Room 153, enter the black Kia Soul, and leave the motel parking lot in the Kia. (Tr. at 26-28, 31-32, 43) Porter then followed the black Kia Soul to the South Dover McDonald's and observed the vehicle back into a parking space, where a white male (R.B.) entered the passenger side of the Kia. (*Id.* at 43-44) Porter and other members of the Safe Streets unit had parked their vehicles in the parking lot and from there witnessed R.B. hand items back and forth with Defendant. (*Id.* at 45, 95-96) A decision was made at that moment to arrest Defendant based on his outstanding civil contempt capias warrant and based on what appeared to have been a drug transaction just observed. (*Id.* at 45, 73-74, 79) As he approached the driver's-side door of the Kia, Porter observed U.S. currency in the center console and what appeared to be MDMA on the passenger-side floorboard. (*Id.* at 45, 97) As Defendant was placed into custody, Porter asked Defendant if Ms. Carter was in Room 153 at the Super 8 Motel, to which Defendant answered, "Yes, she is there now." (*Id.* 45-46, 78) Law enforcement proceeded to conduct a limited search of the black Kia Soul and then Porter drove the vehicle back to the Super 8 Motel parking lot. (*Id.* at 46, 80, 97-98)

Soon after the events at the McDonald's parking lot, law enforcement executed the administrative search of Room 153 at the Super 8 Motel. (Tr. at 47) An officer knocked on the door and it was answered by Ms. Carter, who was then placed in handcuffs. (*Id.*) Prior to Ms. Carter answering the knock on the door, law enforcement had not witnessed her at the Super 8

Motel; the only information they had specifically tying Ms. Carter to drug transactions had come from the Confidential Informant. (*Id.* at 29-30, 56-57)

At that point, Porter conducted an additional search of the Kia Soul, and recovered in that search heroin, MDMA, and a 9 mm handgun. (*Id.* at 47-48) Porter also assisted law enforcement with the search of Room 153, where heroin, MDMA, and other personal items were recovered. (*Id.* at 47-48, 85, 87)

On February 5, 2019, Defendant was charged in an indictment with the following: (1) possession of a firearm by a prohibited person, in violation of 18 U.S.C. §§ 922(g)(1) & 924(a)(2); (2) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(a)(1)(A)(I); (3) possession with intent to distribute a mixture and substance containing a detectible amount of methylenedioxymethamphetamine (MDMA), in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(C); and, (4) possession of heroin, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(C). (D.I. 7) On October 1, 2019, a grand jury returned a superseding indictment, which contains the same counts and also expressly alleges that Defendant knew he was a convicted felon when he possessed the firearm he is alleged to have unlawfully possessed in Count 1. (D.I. 34)[4]

On August 23, 2019, Defendant filed a motion to suppress (D.I. 26), along with a motion to dismiss (D.I. 27) and discovery-related motions (*see* D.I. 28-30). The government responded on September 17, 2019. (D.I. 33) Defendant did not file a reply brief. Subsequently, on March 5, 2020, the Court held an evidentiary hearing with live in-person testimony from Police Officer

---

[4] Based on the superseding indictment, the Court will deny the motion to dismiss Count 1 of the original indictment, which was based on that earlier indictment's alleged non-compliance with the subsequently-issued Supreme Court decision in *Rehaif v. United States*, 139 S. Ct. 2191, 2200 (2019). (D.I. 27 at 1; *see also* D.I. 33 at 9)

Joshua Boesenberg (*see* Tr. at 23-33, 89-93), Probation Officer Rick Porter (*see id.* at 33-88), and Probation Officer Daniel Stagg (*see id.* at 93-99). After COVID-19-related delays at the Federal Detention Center extended the time it took for Defendant to confer with his counsel following the evidentiary hearing (*see* D.I. 49, 51), the parties completed supplemental briefing on July 31, 2020 (*see* D.I. 53-55).

## II. DISCUSSION

### A. Motion to Suppress Evidence (D.I. 26)

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "To deter Fourth Amendment violations, when the Government seeks to admit evidence collected pursuant to an illegal search or seizure, the judicially created doctrine known as the exclusionary rule . . . suppresses that evidence and makes it unavailable at trial." *United States v. Katzin*, 769 F.3d 163, 169 (3d Cir. 2014). Here, Defendant seeks to suppress all evidence seized from the Kia Soul. (D.I. 55 at 1-2; D.I. 56 at 8-11) Defendant also seeks to suppress all evidence seized from Room 153 at the Super 8 Motel pursuant to the administrative search directed at Ms. Carter.[5] (D.I. 55 at 2-7; D.I. 56 at 11-17)

#### 1. The Warrantless Search of the Kia Soul Did Not Violate Defendant's Fourth Amendment Rights

Warrantless searches that do not fall within "a few specifically established and well-

---

[5] Defendant had previously sought to suppress evidence seized from the motel room on the basis that the police did not have probable cause, due to the Confidential Informant's alleged unreliability. (D.I. 26 at 3-6) Defendant had also sought to suppress evidence obtained from the Kia Soul and his subsequent statements as fruit of the poisonous tree flowing from an allegedly illegal arrest in the McDonald's parking lot. (D.I. 26 at 6-9) Following the evidentiary hearing and further discussions among the parties, Defendant dropped these grounds for his motion and narrowed the issues for the Court to decide. (*See* D.I. 51 at ¶ 3; D.I. 53 at 2 n.1)

5

delineated exceptions" are "per se unreasonable under the Fourth Amendment." *Katz v. United States*, 389 U.S. 347, 357 (1967). One such exception is a search incident to arrest. In *Arizona v. Gant*, 556 U.S. 332, 343 (2009), the Supreme Court explained that a warrantless search of a vehicle pursuant to a lawful arrest is justified when the arrestee is unsecured and within reaching distance of the passenger compartment or it is reasonable to believe evidence relevant to the crime may be found in the vehicle. Additionally, under the automobile exception, law enforcement may search a vehicle without a warrant if there is probable cause to believe that the vehicle contains evidence of a crime. *See United States v. Ross*, 456 U.S. 798, 809 (1982); *United States v. Donahue*, 764 F.3d 293, 299-300 (3d Cir. 2014).

In the instant case, law enforcement had not obtained a warrant when it searched the Kia Soul and seized the firearm and drugs from the vehicle. Defendant argues that the government cannot satisfy its burden to show, by a preponderance of the evidence, that the warrantless search was constitutional under the search incident to arrest or automobile exceptions. *See United States v. Ritter*, 416 F.3d 256, 261 (3d Cir. 2005). Defendant primarily contends that law enforcement moving the Kia Soul from the McDonald's to the Super 8 Motel before searching the vehicle undermines the government's ability to carry its burden. (D.I. 53 at 8-9) The Court disagrees.

With respect to the search incident to arrest exception, Defendant's argument is not directed to what the government is actually contending. Contrary to Defendant's suggestion, the government does not rely on the "immediate control" justification set out in *Chimel v. California*, 395 U.S. 752, 763 (1969), which authorizes police to search a vehicle when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search. (D.I. 54 at 4-5) Rather, the government relies on what it contends was a reasonable

belief that evidence relevant to the crime Defendant had just been arrested for in the McDonald's parking lot might be found in the Kia Soul. *See Riley v. California*, 573 U.S. 373, 385 (2014) ("[A]n independent exception for a warrantless search of a vehicle's passenger compartment [is] when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.").

The government has carried its burden with respect to this second "reasonable belief" component of the search incident to arrest exception. The government has proven by a preponderance of the evidence that it was reasonable to believe evidence of a drug crime might be found in the Kia Soul, given that law enforcement had just witnessed what appeared to be a drug transaction between Defendant and R.B. take place in the vehicle, and further observed a bag of what appeared to be MDMA in plain view on the passenger side floorboard as well as currency in the center console. (*See* D.I. 54 at 5)

An additional, independently-sufficient basis establishing the lawfulness of the search is the automobile exception, with respect to which the government has also met its burden. Notably, the Court agrees with the government that Defendant does not dispute that probable cause existed to believe that evidence of a crime would be found in the vehicle at the time of the search. (*See* D.I. 54 at 7; *see also id.* at 5-6 & n.3) Instead, Defendant argues that moving the Kia from the McDonald's to the Super 8 Motel renders the automobile exception inapplicable. (*See* D.I. 53 at 10; D.I. 54 at 6-7) But Defendant has not identified any legal support for this proposition, nor is the Court aware of any. To the contrary, the Supreme Court has instructed that "[t]here is no requirement that the warrantless search of a vehicle occur contemporaneously with its lawful seizure." *United States v. Johns*, 469 U.S. 478, 484 (1985); *see also Donahue*, 764 F.3d at 298 (stating that automobile exception carries "virtually no temporal, physical, or

7

numerical limitations" and applying that exception to warrantless searches of vehicle occurring on four separate occasions, in three different locations, over span of five days). The Court is persuaded that probable cause existed for law enforcement to believe that the Kia Soul would contain evidence of a crime at the time the search was conducted.[6]

### 2. The Search of Room 153 at the Super 8 Motel Did Not Violate Defendant's Fourth Amendment Rights

Probationers "do not enjoy the absolute liberty to which every citizen is entitled, but only conditional liberty properly dependent on observance of special probation restrictions." *Griffin v. Wisconsin*, 483 U.S. 868, 874 (1987). Such restrictions may include being subject to warrantless administrative searches; that is, a search approved through the probation office, not a judicial officer. *See United States v. Knights*, 534 U.S. 112, 119 (2001). An administrative probation search must be supported by reasonable suspicion. *Id.* at 121. Reasonable suspicion is assessed based on the totality of the circumstances, requiring a determination as to whether the "officer has a particularized and objective basis for suspecting legal wrongdoing." *United States v. Arizu*, 534 U.S. 266, 273 (2002). "Although a mere 'hunch' does not create reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." *Navarette v. California*, 572 U.S. 393, 397 (2014). "When an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable." *Knights*, 534 U.S. at 121.

---

[6] The parties' supplemental briefing also addresses other potential justifications for the vehicle search (i.e., inventory search, administrative search) (*see* D.I. 53 at 10-11; D.I. 54 at 8), which the Court need not address given the Court's conclusions on the applicability of the search incident to arrest and automobile exceptions.

"Parole agents, like other law enforcement officers, should 'draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person.'" *United States v. Henley*, 941 F.3d 646, 651-52 (3d Cir. 2019) (quoting *Arvizu*, 534 U.S. at 273).

Porter obtained the administrative authorization for a search of Ms. Carter and the motel room on September 27. Although Defendant was not the subject of this search, the government does not dispute that Defendant had a legitimate expectation of privacy in the motel room and, therefore, has standing to challenge the constitutionality of the administrative search.[7] (D.I. 54 at 9)

Defendant argues that the government cannot show reasonable suspicion existed to support the administrative search, reasoning there was insufficient evidence to establish that Ms. Carter was staying in Room 153 and, moreover, that law enforcement was only in possession of uncorroborated information provided by the Confidential Informant. (D.I. 53 at 14-17) Defendant characterizes all of the other information law enforcement had in its possession – Porter's observation a week prior to September 28 of Ms. Carter driving a black Kia Soul, the Confidential Informant's identification of Ms. Carter as operating a black Kia Soul with mud on the wheel well, Boesenberg's observation of a black Kia Soul with mud on the wheel well parked outside Room 153 at the Super 8 Motel, law enforcement's awareness that Ms. Carter and Defendant had a romantic relationship, and the motel manager's telling officers that Defendant

---

[7] The parties' supplemental filings discuss law enforcement's compliance with state-law procedures governing searches (e.g., whether Porter and his supervisor adequately followed guidelines in approving the administrative search) and whether these matters are relevant to Defendant's motion to suppress. (*See* D.I. 53 at 14-15; D.I. 54 at 10-11) Because Defendant confirms that he "is not arguing that the officers' failure to comply with state-law procedures is the reason the evidence must be suppressed" (D.I. 55 at 2), the Court need not decide this issue.

9

was staying in the room within his "girlfriend" – as merely static details that do not support reasonable suspicion that Ms. Carter was engaged in illegal conduct. (*See* D.I. 55 at 3; *see also* D.I. 53 at 15-16 (citing *United States v. Mendonsa*, 989 F.2d 366, 369 (9th Cir. 1993)) The Court disagrees. Defendant's theory is, as the government correctly explains, an attempt to isolate individual facts from their larger context. (D.I. 54 at 13) "Evaluating factors in isolation and then according no weight to conduct susceptible to innocent explanation departs sharply from the Supreme Court's teachings." *Henley*, 941 F.3d at 652-53.

Considering the totality of the circumstances, as the Court must, the Court agrees with the government that it was reasonable to suspect Ms. Carter was engaged in illegal activities on September 28, 2018, and thus, the administrative search of Room 153 did not violate the Fourth Amendment. Law enforcement's prior interactions with Defendant and Ms. Carter, along with their existing knowledge of their relationship and the motel manager's identification of Defendant staying in Room 153 with his "girlfriend," reasonably corroborated law enforcement's suspicion that Ms. Carter was staying in Room 153. Further support is found in the fact that Ms. Carter answered the door when officers knocked, prior to their undertaking the search.[8]

Reasonable suspicion to believe that evidence relating to heroin and firearms offenses would be found in Room 153 was also supported by information that had been provided by the

---

[8] Defendant suggests that Ms. Carter's answering of the door did not establish she was staying at the motel and may have merely indicated she was a guest. (*See* D.I. 53 at 15; D.I. 55 at 2-3) That may be, but the Court agrees with the government that its burden is not to establish facts unequivocally. (*See* D.I. 54 at 13 n.10) The government has met its burden to prove, by a preponderance of the evidence, reasonable suspicion, based on the totality of circumstances, including the several hours Ms. Carter had been in the motel room without leaving, the motel manager's statements, and the information provided by Defendant ("Yes, she is there now"). Additionally, as the government also points out, Ms. Carter's authorized address was 108 S. Governor's Ave., so law enforcement had reason to suspect that her alleged presence at the Super 8 Motel was a violation of the terms of her probation, further justifying the administrative search. (*See* D.I. 46. Ex. 1)

10

Confidential Informant and had been corroborated prior to the execution of the administrative search. This includes the registration of Room 153 to Defendant, Defendant's driving a black Kia Soul with mud on the wheel well to the McDonald's, and Defendant's apparent engagement in a drug transaction in that vehicle in the McDonald's parking lot. Thus, in view of the entire record, the Court is persuaded that officers had particularized and objective bases to suspect that Ms. Carter was engaged in illegal activities in Room 153.

Finally, the Court is also persuaded that the evidence from Room 153 would inevitably have been discovered even without the administrative search. (D.I. 54 at 16) Law enforcement has just observed Defendant leave the motel and go to the McDonald's parking lot where he was then arrested in the midst of an alleged drug transaction. Drugs and money were in plain view in the vehicle when Defendant was arrested at the McDonald's parking lot. Subsequent, lawful actions by law enforcement would have inevitably led them to search Room 153 – where Defendant had last spent the night and the location from which he left before heading to McDonald's – and to have found and seized the evidence Defendant now seeks to suppress.

Therefore, Defendant's motion to suppress the evidence seized via the warrantless search of Room 153 at the Super 8 Motel will be denied.

### B. Motion to Compel Production of Rule 404(b) and Rule 609 Evidence (D.I. 28)

Federal Rule of Evidence 404(b) requires that the government provide reasonable notice prior to trial of its intention to use evidence of other crimes, wrongs, or acts for the purpose of proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. "Courts that have considered what constitutes 'reasonable notice' have concluded that notice of intent to use Rule 404(b) evidence seven to ten days prior to trial is sufficient," *United States v. Long-Parham*, 183 F. Supp. 3d 746, 750 (W.D. Pa. 2016) (collecting

11

cases), although production of Rule 404(b) evidence up to thirty days prior to trial is also typical, *see, e.g., United States v. Campell*, 2018 U.S. Dist. LEXIS 34936 (D. Del. Mar. 5, 2018); *United States v. Smith*, 2017 U.S. Dist. LEXIS 185827 (D. Del. Nov. 9, 2017). Federal Rule of Evidence 609 provides that impeachment by evidence of a criminal conviction may be used under certain circumstances.

Defendant moves to compel the government's production of Rule 404(b) and Rule 609 evidence that it intends to introduce in its case-in-chief at least thirty days before trial. (D.I. 28 at 6) The Court's general practice is not to set any such deadlines prior to even scheduling a trial, which is the status of this case. No reason to depart from this practice has been identified here. Accordingly, the Court will deny Defendant's motion without prejudice to renew in connection with or after the Court schedules trial.

### C.     Motion to Preserve Law Enforcement Notes (D.I. 29)

Law enforcement must preserve rough notes so that the trial court can determine whether the notes should be made available to defendants pursuant to *Brady v. Maryland* or the Jencks Act. *See United States v. Ammar*, 714 F.2d 238, 259 (3d Cir. 1983); *United States v. Vella*, 562 F.2d 275, 276 (3d Cir. 1977). Defendant moves for an order requiring all government agents and state and local law enforcement officers who participated in the investigation of this case to retain and preserve all rough notes and writings. (D.I. 29 at 4-5) The government represents that "all the interviews that were conducted during the investigation were videotaped and the videos of those interviews have been provided to Defendant's counsel." (D.I. 33 at 9) Further, the government "does not object to an order requiring that any rough notes currently in the possession of local, state, or federal law enforcement be preserved." (D.I. 33 at 9) Accordingly, the Court will grant Defendant's motion.

### D. Motion for Discovery (D.I. 30)

In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." The government must disclose materials that go to the question of guilt or innocence as well as materials that might affect the jury's judgment of the credibility of a crucial prosecution witness. *See Giglio v. United States*, 405 U.S. 150, 154-55 (1972); *see also United States v. Perdomo*, 929 F.2d 967 (3d Cir. 1991).

Defendant moves for an order compelling the government to provide him with full discovery pursuant to Federal Rule of Criminal Procedure 16 as well as evidence and information that is favorable to his defense in accordance with *Brady*, *Giglio*, and their progeny. (D.I. 30) The government responds that it is aware of its obligations and that "[s]uch materials will be produced in accordance with the applicable case law and the orders and procedures of the Court." (D.I. 33 at 10) The Court will hold the government to these representations and, accordingly, will deny Defendant's motion without prejudice to renew. *See United States v. Marshall*, 471 F. Supp. 2d 479 (D. Del. 2007).

## III. Conclusion

An appropriate Order follows.

13